**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| MICHAEL KENT, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>THE MEDICINES COMPANY, ALEXANDER J. DENNER, GENO J. GERMANO, JOHN C. KELLY, CLIVE MEANWELL, PARIS PANAYIOTOPOULOS, SARAH J. SCHLESINGER, MARK TIMNEY, NOVARTIS AG, and MEDUSA MERGER CORPORATION,<br><br>Defendants. | ) | Case No. _______________<br><br>JURY TRIAL DEMANDED<br><br>CLASS ACTION |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on November 24, 2019 (the "Proposed Transaction"), pursuant to which The Medicines Company ("Medicines Company" or the "Company") will be acquired Novartis AG ("Parent") and Medusa Merger Corporation ("Merger Sub," and together with Parent, "Novartis").

2. On November 23, 2019, Medicines Company's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Novartis. Pursuant to the terms of the Merger Agreement, Merger Sub commenced a tender offer (the "Tender Offer") to purchase all of Medicines Company's

outstanding common stock for $85.00 per share in cash. The Tender Offer is set to expire on January 3, 2020.

3. On December 5, 2019, defendants filed a Solicitation/Recommendation Statement (the "Solicitation Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4. The Solicitation Statement omits material information with respect to the Proposed Transaction, which renders the Solicitation Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(e), 14(d), and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Solicitation Statement.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(e), 14(d), and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

**PARTIES**

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Medicines Company common stock.

9. Defendant Medicines Company is a Delaware corporation and maintains its principal executive offices at 8 Sylvan Way, Parsippany, New Jersey 07054. Medicines Company's common stock is traded on the NASDAQ Global Select Market under the ticker symbol "MDCO."

10. Defendant Alexander J. Denner is Chairman of the Board of the Company.

11. Defendant Geno J. Germano is a director of the Company.

12. Defendant John C. Kelly is a director of the Company.

13. Defendant Clive Meanwell is Chief Innovation Officer and a director of the Company.

14. Defendant Paris Panayiotopoulos is a director of the Company.

15. Defendant Sarah J. Schlesinger is a director of the Company.

16. Defendant Mark Timney is Chief Executive Officer and a director of the Company.

17. The defendants identified in paragraphs 10 through 16 are collectively referred to herein as the "Individual Defendants."

18. Defendant Parent is a company organized under the laws of Switzerland and a party to the Merger Agreement.

19. Defendant Merger Sub is a Delaware corporation, a wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

**CLASS ACTION ALLEGATIONS**

20. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Medicines Company (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

21. This action is properly maintainable as a class action.

22. The Class is so numerous that joinder of all members is impracticable. As of November 21, 2019, there were approximately 82,946,319 shares of Medicines Company common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

23. Questions of law and fact are common to the Class, including, among others, whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

24. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

25. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

26. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

### *Background of the Company and the Proposed Transaction*

27. Medicines Company is a biopharmaceutical company that focuses on

atherosclerotic cardiovascular disease.

28. The Company develops inclisiran, the investigational RNA interference therapeutic that specifically inhibits production of proprotein convertase subtilisin/kexin type 9, a key protein that controls LDL-cholesterol.

29. The Company has the right to develop, manufacture, and commercialize inclisiran under its collaboration agreement with Alnylam Pharmaceuticals, Inc.

30. On November 23, 2019, Medicines Company's Board caused the Company to enter into the Merger Agreement with Novartis.

31. Pursuant to the terms of the Merger Agreement, Merger Sub commenced the Tender Offer to acquire all of Medicines Company's outstanding common stock for $85.00 per share in cash.

32. According to the press release announcing the Proposed Transaction:

> The Medicines Company (NASDAQ: MDCO) announced today that it has entered into definitive agreement in which Novartis AG will acquire The Medicines Company for $85 per share in an all-cash transaction, implying a fully diluted equity value of $9.7 billion. The price represents a premium of approximately 45% to The Medicines Company's closing share price of $58.65 on November 18, 2019 (the last trading day prior to news reports of a potential transaction between The Medicines Company and Novartis AG). The transaction was unanimously approved by the Boards of Directors of both companies. . . .
>
> Completion of the transaction is expected in first quarter of 2020, pending the successful completion of the tender offer and other customary closing conditions. Until that time, The Medicines Company will continue to operate as a separate and independent company. The company expects to file regulatory submissions for inclisiran in the U.S. in the fourth quarter of 2019 and in Europe in the first quarter of 2020.
>
> Goldman Sachs & Co. LLC and J.P. Morgan Securities LLC are acting as financial advisors to The Medicines Company, and Paul, Weiss, Rifkind, Wharton & Garrison LLP is acting as legal counsel for The Medicines Company.

> Transaction Details
>
> Under the terms of the merger agreement, Novartis AG will commence a tender offer to purchase all outstanding shares of The Medicines Company for $85 per share in cash. Following the completion of the tender offer, a wholly owned subsidiary of Novartis AG will merge with The Medicines Company and shares of The Medicines Company that have not been tendered and purchased in the tender offer will be converted into the right to receive the same price per share in cash as paid in the tender offer (other than shares held by stockholders who properly demand and perfect appraisal rights under Delaware law). The tender offer and the merger are subject to customary closing conditions, including the tender of at least a majority of outstanding shares of The Medicines Company and the expiration or termination of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act. The tender offer and the merger are not subject to a financing condition.

33. The Merger Agreement contains a "no solicitation" provision that prohibits the Individual Defendants from soliciting alternative proposals and severely constrains their ability to communicate and negotiate with potential buyers who wish to submit or have submitted unsolicited alternative proposals. Section 6.02(a) of the Merger Agreement provides:

> Except as permitted by this Section 6.02, during the Pre-Closing Period, the Acquired Companies and their respective directors and officers shall not, and shall not authorize their other Representatives to, and shall direct them not to (i) initiate, solicit, propose, knowingly induce or knowingly encourage or knowingly facilitate the making of any Acquisition Proposal, (ii) other than informing Third Parties of the existence of the provisions contained in this Section 6.02, engage in, continue or otherwise participate in negotiations or discussions with, or furnish any non-public information (or access thereto) concerning the Company or any of the Company Subsidiaries to, any Third Party in connection with, or for the purpose of knowingly encouraging or knowingly facilitating, an Acquisition Proposal, (iii) recommend or enter into any Contract, letter of intent, acquisition agreement, agreement in principle, memorandum of understanding or similar agreement with respect to any Acquisition Proposal or (iv) approve, authorize or agree to do any of the foregoing. Promptly following the execution of this Agreement, and in any event within one (1) Business Day of the date of this Agreement, the Acquired Companies shall, and shall direct their respective Representatives to, (A) cease and cause to be terminated any solicitation and any and all existing discussions or negotiations with any Person conducted heretofore with respect to any Acquisition Proposal or any inquiry or request for information that could reasonably be expected to lead to, or result in, an Acquisition Proposal and (B) terminate access by any Third Party to any physical or electronic data room relating to any potential Acquisition Transaction. . . .

34. Additionally, the Company must promptly advise Novartis of any proposals or inquiries received from other parties. Section 6.02(f) of the Merger Agreement states:

> During the Pre-Closing Period, the Company shall promptly (and in any event no later than twenty-four (24) hours after receipt) advise Parent orally or in writing in the event that the Company receives any Acquisition Proposal and in connection with such notice provide to Parent the material terms and conditions of any such Acquisition Proposal (including the identity of the Third Party making any such Acquisition Proposal). During the Pre-Closing Period, the Company shall (i) keep Parent reasonably informed of the status, material details and material terms of any such Acquisition Proposal (including, prior to initially furnishing any information or to commencing any discussions or negotiations pursuant to Section 6.02(b), advising Parent of any determination by the Company Board pursuant to Section 6.02(b)) and any discussions and negotiations concerning the material terms and conditions thereof and (ii) promptly provide to Parent (and in any event no later than twenty four (24) hours after receipt or delivery thereof) any written proposal, indication of interest (or amendment thereto) or any other written material that constitutes an Acquisition Proposal (or amendment thereto) including copies of any proposed Alternative Acquisition Agreements and any other material agreements (or drafts thereof) and any financing commitments related thereto.

35. Moreover, the Merger Agreement contains a restrictive "fiduciary out" provision permitting the Board to change its recommendation of the Proposed Transaction under extremely limited circumstances, and grants Novartis a "matching right" with respect to any "Superior Proposal" made to the Company. Section 6.02(e) of the Merger Agreement provides:

> Notwithstanding anything to the contrary contained in this Agreement, at any time prior to the consummation of the Offer if, in response to a bona fide written Acquisition Proposal made by a Third Party after the date of this Agreement which does not arise from a material breach of this Section 6.02 and has not been withdrawn, the Company Board determines in good faith (after consultation with its outside legal counsel and financial advisors) that (i) such Acquisition Proposal constitutes a Superior Proposal and (ii) the failure to take an action set forth in clause (x) or (y) would reasonably be expected to constitute a breach of the Company Board's fiduciary duties under Applicable Law, then (x) the Company Board may make a Change in Recommendation or (y) the Company may terminate this Agreement pursuant to Section 8.01(d)(i) in order to enter into an Alternative Acquisition Agreement with respect to such Superior Proposal; provided that in either such case (A) the Company shall have provided to Parent three (3) Business Days' prior written notice (the "Superior Proposal Notice") (provided that such notice shall not constitute a Change in Recommendation) advising Parent that the

> Company intends to take such action (and specifying, in reasonable detail, the material terms and conditions of any such Superior Proposal, including the identity of the Third Party making any such Superior Proposal) and providing Parent with a complete copy of any written request, proposal or offer, including any proposed Alternative Acquisition Agreement, and any other documents containing the material terms of such Superior Proposal (provided that Parent shall be required to keep all such documents and their terms confidential in accordance with the terms of the Confidentiality Agreement), and (B):
>
> (1) during such three (3) Business Day period, if requested by Parent in good faith, the Company and its Representatives shall negotiate with Parent regarding changes to the terms of this Agreement and any other proposals made by Parent intended by Parent to cause such Acquisition Proposal to no longer constitute a Superior Proposal; and
>
> (2) following such three (3) Business Day period, the Company Board shall have determined in good faith (after consultation with its outside legal counsel and financial advisors) that (x) such Acquisition Proposal continues to constitute a Superior Proposal, and (y) the failure to make the Change in Recommendation or terminate this Agreement pursuant to Section 8.01(d)(i) would reasonably be expected to constitute a breach of the Company Board's fiduciary duties under Applicable Law.
>
> Any material revisions to such Acquisition Proposal shall constitute a new Acquisition Proposal and shall in each case require the Company to deliver to Parent a new Superior Proposal Notice, except that the references to three (3) Business Days in this Section 6.02(e) shall be deemed to be two (2) Business Days.

36. The Merger Agreement also provides for a "termination fee" of $290 million payable by the Company to Novartis if the Individual Defendants cause the Company to terminate the Merger Agreement.

***The Solicitation Statement Omits Material Information, Rendering It False and Misleading***

37. Defendants filed the Solicitation Statement with the SEC in connection with the Proposed Transaction.

38. As set forth below, the Solicitation Statement omits material information with respect to the Proposed Transaction, which renders the Solicitation Statement false and misleading.

39. First, the Solicitation Statement omits material information regarding the Company's financial projections.

40. The Solicitation Statement fails to disclose: (i) all line items used to calculate (a) EBIT, (b) EBITDA, and (c) unlevered free cash flow; and (ii) a reconciliation of all non-GAAP to GAAP metrics.

41. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

42. Second, the Solicitation Statement omits material information regarding the analyses performed by the Company's financial advisors in connection with the Proposed Transaction, Goldman Sachs & Co. LLC ("Goldman") and J.P. Morgan Securities LLC ("JPM").

43. With respect to Goldman's Illustrative Discounted Cash Flow Analysis, the Solicitation Statement fails to disclose: (i) the individual inputs and assumptions underlying the discount rates ranging from 9.0% to 11.0%; (ii) the line items used to calculate the unlevered free cash flows to be generated by the Company for the period from September 30, 2019 to December 31, 2040; (iii) the terminal values for the Company; (iv) Goldman's basis for applying perpetuity growth rates ranging from 10.0% to 0.0%; (v) the net cash of the Company; and (vi) the total number of fully diluted Company shares outstanding.

44. With respect to JPM's Discounted Cash Flow Analysis, the Solicitation Statement fails to disclose: (i) all line items used to calculate the unlevered free cash flows that the Company is expected to generate during fiscal years 2019 through 2040; (ii) the terminal values of the Company; (iii) JPM's basis for applying a perpetual growth rate of negative 5%; (iv) the individual

inputs and assumptions underlying the range of discount rates from 10.5% to 12.5%; and (v) the Company's estimated excess cash, option exercise proceeds, total debt, and net operating losses used by JPM in the analysis.

45. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

46. The omission of the above-referenced material information renders the Solicitation Statement false and misleading, including, *inter alia*, the following section of the Solicitation Statement: The Solicitation or Recommendation.

47. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

**COUNT I**

**(Claim for Violation of Section 14(e) of the 1934 Act Against Defendants)**

48. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

49. Section 14(e) of the 1934 Act states, in relevant part, that:

> It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders[.]

50. Defendants disseminated the misleading Solicitation Statement, which contained statements that, in violation of Section 14(e) of the 1934 Act, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not misleading.

51. The Solicitation Statement was prepared, reviewed, and/or disseminated by defendants.

52. The Solicitation Statement misrepresented and/or omitted material facts in connection with the Proposed Transaction as set forth above.

53. By virtue of their positions within the Company and/or roles in the process and the preparation of the Solicitation Statement, defendants were aware of this information and their duty to disclose this information in the Solicitation Statement.

54. The omissions in the Solicitation Statement are material in that a reasonable shareholder will consider them important in deciding whether to tender their shares in connection with the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available.

55. Defendants knowingly or with deliberate recklessness omitted the material information identified above in the Solicitation Statement, causing statements therein to be materially incomplete and misleading.

56. By reason of the foregoing, defendants violated Section 14(e) of the 1934 Act.

57. Because of the false and misleading statements in the Solicitation Statement, plaintiff and the Class are threatened with irreparable harm.

58. Plaintiff and the Class have no adequate remedy at law.

## COUNT II

**(Claim for Violation of 14(d) of the 1934 Act Against Defendants)**

59. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

60. Section 14(d)(4) of the 1934 Act states:

> Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

61. Rule 14d-9(d) states, in relevant part:

> Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof[.]

Item 8 requires that directors must "furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading."

62. The Solicitation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits the material facts set forth above, which renders the Solicitation Statement false and/or misleading.

63. Defendants knowingly or with deliberate recklessness omitted the material information set forth above, causing statements therein to be materially incomplete and misleading.

64. The omissions in the Solicitation Statement are material to plaintiff and the Class, and they will be deprived of their entitlement to make a fully informed decision with respect to the Proposed Transaction if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer.

65. Plaintiff and the Class have no adequate remedy at law.

**COUNT III**

**(Claim for Violation of Section 20(a) of the 1934 Act Against the Individual Defendants and Novartis)**

66. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

67. The Individual Defendants and Novartis acted as controlling persons of Medicines Company within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as directors of Medicines Company and participation in and/or awareness of the

Company's operations and/or intimate knowledge of the false statements contained in the Solicitation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

68. Each of the Individual Defendants and Novartis was provided with or had unlimited access to copies of the Solicitation Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

69. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Solicitation Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly connected with and involved in the making of the Solicitation Statement.

70. Novartis also had direct supervisory control over the composition of the Solicitation Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Solicitation Statement.

71. By virtue of the foregoing, the Individual Defendants and Novartis violated Section 20(a) of the 1934 Act.

72. As set forth above, the Individual Defendants and Novartis had the ability to exercise control over and did control a person or persons who have each violated Section 14(e) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their

positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.

73. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

74. Plaintiff and the Class have no adequate remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays for judgment and relief as follows:

A. Enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to file a Solicitation Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(e), 14(d), and 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury.

Dated: December 10, 2019

**RIGRODSKY & LONG, P.A.**

By: */s/ Gina M. Serra*

Brian D. Long (#4347)
Gina M. Serra (#5387)
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: bdl@rl-legal.com
Email: gms@rl-legal.com

*Attorneys for Plaintiff*

**OF COUNSEL:**

**RM LAW, P.C.**
Richard A. Maniskas
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
Telephone: (484) 324-6800
Facsimile: (484) 631-1305
Email: rm@maniskas.com